UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAMEA GRANT, <br><br> Plaintiff, <br><br> v. <br><br> ENTERTAINMENT CRUISES, INC.; <br> SPIRIT CRUISES, LLC, <br><br> Defendants. | Civil Action Nos. 17-1159 (JEB) <br> 17-1410 (JEB) |

**MEMORANDUM OPINION**

*Pro se* Plaintiff Tamea Grant, a deckhand on a local cruise ship, brought this suit against Entertainment Cruises, Inc., and its subsidiary Spirit Cruises, LLC, alleging that her former captain intentionally struck her with a rope during a docking incident and then denied her medical assistance. After two rounds of briefing, what remains of her case is a single count under the Jones Act, 46 U.S.C. § 30104, which allows a seaman injured on a vessel in navigation to recover from his employer. Defendants, contending that they cannot be held liable for this intentional tort, now move for summary judgment. Because the Court finds that there are several material facts in dispute, it will deny the Motion.

**I.    Background**

At the summary-judgment stage, courts must consider the facts in the evidentiary record. See Fed. R. Civ. P. 56(c). Here, however, the only evidence proffered by either party consists of snippets from Plaintiff's deposition related to the incident. To provide the reader with some context, accordingly, the Court draws general background from the Complaint and uses the deposition where available.

1

A. Factual History

In contrast to her 20-year career with the U.S. Navy, Grant's time working on Defendants' vessels was rather abbreviated. See Second Amend. Compl., ¶¶ 4, 15. In March 2015, Spirit Cruises hired her as a deckhand, during which time her job duties included greeting guests, docking and undocking the ship, "stand[ing] lookout," and assisting with some maintenance and cleaning. Id., ¶¶ 4, 16.

On April 25, 2015, Plaintiff's assigned vessel hit a few snags when trying to embark its passengers. First, while standing on the gangway, Grant "heard yelling and witnessed the Captain" removing several intoxicated guests, which put him "in a bad mood." Id., ¶ 18. The first mate then instructed Grant to help the Captain handle the ship's ropes — "an alarming request," as that was typically the first mate's job. Id. They removed the boat lines and the Captain began to back the vessel away from the dock, but he was then told that an employee had been "fired and needed to leave the boat" "immediately." Id., ¶ 19. This necessitated a trip back to the dock, where the boat would need to be re-tied and the gangway re-set. Again, it was usually the first mate's responsibility to assist the Captain in these endeavors, but on this night, Grant was told to help. Initially, Plaintiff resisted because "she could see the anger mounting in the Captain[']s face," but, not wanting to be the next one told to walk the plank, she ultimately relented and went to help. Id. In the middle of preparing to lift the gangway, the Captain suddenly "yanked the gangway . . . [and] began slamming it back and forth in the walkway." Id. Another officer was concerned that she had been injured, but Plaintiff informed him that she had "moved [her] hand." Id.

Later, she was not so lucky. When Grant subsequently prepared to dock the boat again, the line became jammed. She asked the Captain for help, at which point he attempted to

dislodge a stuck rope or line, but ended up swinging the rope and hitting her on the head. See Opp., Attach. 1 (Deposition of Tamea Grant) at 82:16-22. To Grant, this assault was "intentional[]." Id. at 82:16-22. This incident caused "severe headaches, ringing in her ears, memory loss, visual disturbances, searing pain in [her] elbow joint, and . . . golfer's elbow." SAC, ¶ 32. When she told the Captain that he had hit her, "his reaction was to smile," and he refused to engage in any discussion with her. Id., ¶ 23. Her effort to relay the severity of her injuries was similarly unsuccessful, and the Captain both refused to provide her medical assistance and forbade anyone else from doing so. See Grant Depo. at 104:12-22. Grant then disembarked and went to her car. As she began to dial 911, another deckhand appeared in her passenger window; fearing that the employee might have been sent to "inflict more harm," Plaintiff "feared for her life and fled the parking lot." SAC, ¶ 24.

B. Procedural History

Two years later, Grant filed two separate suits against Entertainment Cruises and Spirit Cruises in the Superior Court of the District of Columbia. Both actions alleged three violations of the D.C. Human Rights Act and intentional and negligent infliction of emotional distress. See ECF No. 1 (Notice of Removal), Exh. A. Defendants successfully removed the cases to federal court, and this Court consolidated them. Id.; Minute Order of August 29, 2017. The cruise lines then moved to dismiss all of her claims as time-barred. See ECF No. 10. In response, Plaintiff requested leave to amend her Complaint, throwing the DCHRA and emotional-distress counts overboard in favor of four counts under D.C. labor-law statutes and a Jones Act claim. See ECF No. 21; Case No. 17-1410, ECF No. 16. The Court granted her Motion to Amend the Complaint and, accordingly, denied Defendants' first Motion to Dismiss as moot. The cruise lines again moved to dismiss, which the Court largely granted. It allowed her to proceed on one count for

unsafe working conditions and invited her to re-plead the Jones Act claim. See ECF Nos. 24, 29. Grant took the Court up on this offer and successfully moved to file a Second Amended Complaint. See ECF Nos. 33, 36. Again, Defendants moved to dismiss, this time arguing that the Jones Act preempts her D.C. claim. See ECF No. 40. The Court agreed and dismissed her state-law cause of action. See ECF No. 46. Discovery now complete, the cruise lines have filed a Motion for Summary Judgment on the sole remaining count for liability — namely, under the Jones Act.

**II.     Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When a motion for summary judgment is under consideration, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*). On a motion for summary

4

judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials, and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-movant, in other words, is required to provide evidence that would permit a reasonable jury to find in her favor. See Laningham v. U.S. Navy, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

## III. Analysis

Defendants argue that the Jones Act does not encompass liability for the sort of assault Grant claims that she experienced. To decide whether it can, the Court first briefly describes the statute.

### A. Jones Act

Prior to the Jones Act, general maritime law permitted only two theories of recovery for an injured seaman: unseaworthiness — "the vessel owner's duty to ensure that the vessel is reasonably fit to be at sea" — or "maintenance and cure" — "the vessel owner's obligation to provide food, lodging, and medical services." Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 441 (2001) (citations omitted). In 1920, Congress broadened the available bases for recovery through the Jones Act, which provides a cause of action for "[a] seaman injured in the course of employment." 46 U.S.C. § 30104. Because the statute states that the "[l]aws of the United States regulating recovery for . . . a railway employee," id., are also applicable to a Jones Act plaintiff, the Act incorporates the Federal Employers' Liability Act, under which an employer can be held liable for negligence. See 45 U.S.C. § 51; Withhart v. Otto Candies, LLC,

5

431 F.3d 840, 843 (5th Cir. 2005) (Jones Act provides "a negligence cause of action for ship personnel against their employers"). Plaintiff's *pro se* Complaint and Opposition do not clearly set out her legal theories, but, construing them liberally, the Court treats Grant as asserting a Jones Act claim against Defendants for both direct negligence and vicarious liability, and it thus addresses each separately.

B.  Direct Negligence

Vessel owners have a duty to provide safe working conditions for their employees and may be liable for a failure to inform them about or protect them from foreseeable potential hazards. See Thibodeaux v. Ensco Offshore Co., 2017 WL 6722811, at *4 (W.D. La. 2017); Borges v. Seabulk Int'l, Inc., 456 F. Supp. 2d 387, 390 (D. Conn. 2006). Because of the perils of life at sea, see Herman Melville, Moby Dick (1851), a plaintiff asserting negligence under the Jones Act "shoulders a lighter burden [for establishing negligence] than [her] counterpart on land would carry." Wills v. Amerada Hess Corp., 379 F.3d 32, 45 (2d Cir. 2004) (alteration in original) (citation omitted).

The cause of action for negligence under the Act is distinct from the common-law maritime claim for unseaworthiness, which imposes strict liability when a ship owner "fail[s] to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it was intended to be used." Boudreaux v. United States, 280 F.3d 461, 4687 (5th Cir. 2002); see Barlas v. United States, 279 F. Supp. 2d 201, 207-208 (S.D.N.Y. 2003); McBride v. Estis Well Serv., L.L.C., 768 F.3d 382, 399-400 (5th Cir. 2014). Although Plaintiff's Opposition makes several mentions of the "unseaworthiness" of the ship, see Opp. at 11-12, Defendants correctly note that such a claim was not pled in her Second Amended

6

Complaint. Giving her the benefit of the doubt, however, the Court presumes these allegations relate to her Jones Act claim.

According to Grant, Defendants were negligent by failing to (1) properly train the crew; and (2) provide her with proper safety or protective gear. Id. at 11-12. Although Plaintiff lists several instances that she believed constituted such unsafe working conditions, the only one tethered to her alleged injury here is a need for protective gear, specifically a helmet, when tying down the ropes. See Grant Dep. at 81:1. Although a ship owner must provide adequate equipment to seamen, see Smith v. Basic Marine Servs., Inc., 964 F. Supp. 2d 597, 604 (E.D. La. 2013), in order to show that Defendants were negligent in not furnishing her a helmet, Plaintiff must proffer some evidence from which a jury could infer that it was the industry standard or reasonable practice to do so. See Reveron v. Tycom, Inc., 2004 WL 3186600, at *7 (D.N.J. 2004) (granting employer summary judgment when plaintiff did not produce evidence that issued safety equipment was inadequate). She has not done so here and thus cannot, as a matter of law, proceed on a direct-negligence claim.

C. Vicarious Liability

Plaintiff's claim can also be interpreted as alleging that Defendants were vicariously liable for the tortious acts of the Captain, including both the assault and subsequent refusal of medical care. Just as under common law, an employer's Jones Act "negligence" can extend to intentional torts under the doctrine of *respondeat superior* if (1) they were committed by an employee in furtherance of the employer's business, see Beech v. Hercules Drilling Co., L.L.C., 691 F.3d 566, 571-72 (5th Cir. 2012), or (2) "the shipowner knew or should have known of the crew member's violent propensities." Sloan v. United States, 603 F. Supp. 2d 798, 806 (E.D. Pa. 2009). Nothing in the record suggests that Defendants knew or had reason to know of the

Captain's supposed violent nature. The latter ground of foreseeability is thus inapplicable, and the Court only addresses the former.

Defendants assert that the Captain's "duties consisted of ensuring proper navigation of the vessel and the safety of the passengers and crew." Mot. at 7. An assault of a crew member, they argue, is "so clearly contrary to [Defendants'] business interests" that no jury could find it was "done in furtherance of his duties." Id. at 7-8. This, the Court believes, construes the scope of his employment too narrowly. The D.C. Circuit has not addressed *respondeat superior* in the specific context of the Jones Act, but under common-law principles an employer is liable for the intentional torts of its employee committed within the scope of employment when the conduct "is actuated, at least in part, by a purpose to serve" the employer and, given the job duties, was "not unexpectable" by it. Lamb v. Millennium Challenge Corp., 228 F. Supp. 3d 28, 45 (D.D.C. 2017) (quoting Restatement (Second) of Agency § 228 (1958)); see also Johnson v. Weinberg, 434 A.2d 404, 408 (D.C. 1981) (employer liable "where a tort is the outgrowth of a job-related controversy" and "conduct in question was foreseeable as being within the range of duties entrusted to the employee"). Whether the alleged assault satisfies this definition is a question of fact for the jury. Brown v. Argenbright Sec., Inc., 782 A.2d 752, 757 (D.C. 2001).

Indeed, nearly a century ago, the Supreme Court held that an employer was liable in a similar situation. See Jamison v. Encanacion, 281 U.S. 635 (1930), superseded by statute on other grounds as recognized in McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 348-49 (1991). In Jamison, a longshoreman was loading a barge when the foreman assaulted him. Id. at 637-38. At trial, the plaintiff introduced evidence that the foreman struck him, not due to any personal disagreement, but to "hurry him about the work." Id. at 638. The Supreme Court affirmed the jury verdict in favor of the plaintiff, reasoning that even though the assault "was in excess of the

authority conferred by the employer upon the foreman, it was committed in the course of the discharge of his duties and in furtherance of the work of the employer's business." Id. at 641; see also Alpha S.S. Corp. v. Cain, 281 U.S. 642, 643 (1930) (employer liable for supervisor who struck seaman "for the purpose of reprimanding him for tardiness and compelling him to work"); Civil v. Waterman Steamship Corp., 217 F.2d 94, 98 (2d Cir. 1954) (ship owner liable when employee fatally stabbed another employee with a "disciplinary motive").

Grant contends that the assault here occurred while trying to dock the boat, an act that clearly furthers Defendants' business interests. See Grant Depo. at 81:15-22. Given the many frustrations that attend docking (particularly on a cruise ship that frequently serves intoxicated guests), a jury could find that it was "not unexpect[ed]" that he would get angry and lash out. There is no evidence that the Captain and Grant had any prior relationship, such that he would have a personal motive to hit her over the head with a rope. See Lancaster v. Norfolk & W. Ry. Co., 773 F.2d 807, 818 (7th Cir. 1985) (employer not liable "when the motive for the employee's intentional tort is personal"). It is thus plausible that the Captain acted "out of exasperation" or "with an excess of zeal" in an effort to hurry up and tie down the ropes. Id. at 819.

Grant also claims that she was "denied immediate medical assistance causing her injuries to worsen." SAC, ¶ 32; Grant Depo. at 104:12-19; 167:4-9. Vessel owners have a non-delegable duty under the Jones Act to provide prompt and adequate medical care to injured seamen. See Olsen v. Am. S.S. Co., 176 F.3d 891, 895 (6th Cir. 1999); see also Restatement (Second) of Torts § 314B (1965) (employer subject to liability when supervisor knows employee is hurt while performing job duties and fails to care for him); cf. De Centeno v. Gulf Fleet Crews, Inc., 798 F.2d 138, 140 (5th Cir. 1986) (affirming jury verdict for plaintiff and holding ship owner vicariously responsible for negligence of physician it chose to treat ill seaman). If the Captain

9

did indeed refuse her medical aid and prevent others from assisting, Defendants could be held vicariously liable, particularly since their employee was the cause of her injury. This, again, will be for a jury to decide.

## IV. Conclusion

Whether the Captain hit Grant with the rope, his motivations for doing so, and her access to medical care after the alleged injury are all disputed issues of material fact. The Court therefore cannot grant Defendants summary judgment. A contemporaneous Order will so state.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: April 19, 2018